| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Larry D. Simons,<br>larry@lsimonslaw.com<br>**CHAPTER 7 TRUSTEE**<br>3550 Vine Street, Suite 210<br>Riverside, California 92507<br><br>Phone: (951) 686-6300; FAX: (818) 698-1981<br><br><br><br>☐ *Debtor(s) appearing without an attorney*<br>☐ *Attorney for:* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA -  RIVERSIDE DIVISION**

| In re:<br>STARKEISHA SHARNAY JESTER,<br><br><br><br><br><br><br><br><br><br>               Debtor(s). | CASE NO.: 6:23-bk-13579 MH<br><br>CHAPTER: 7<br><br>**NOTICE OF OPPORTUNITY TO**<br>**REQUEST A HEARING ON MOTION**<br><br>**[LBR 9013-1(o)]**<br><br>[No hearing unless requested in writing] |

**TO THE U.S. TRUSTEE AND ALL PARTIES ENTITLED TO NOTICE, PLEASE TAKE NOTICE THAT:**

1.  Movant(s) Larry D. Simons, Chapter 7 Trustee                                                                                      ,
    filed a motion or application (Motion) entitled Motion to Approve Compromise of Controversy Between Larry D. Simons, Chapter 7 Trustee and University of Southern California                                                             .

2.  Movant(s) is requesting that the court grant the Motion without a hearing as provided for in LBR 9013-1(o), unless a party in interest timely files and serves a written opposition to the Motion and requests a hearing.

3.  The Motion is based upon the legal and factual grounds set forth in the Motion. *(Check appropriate box below):*

    ☒  The full Motion is attached to this notice; or

    ☐  The full Motion was filed with the court as docket entry # _____, and a detailed description of the relief sought is attached to this notice.

4.  **DEADLINE FOR FILING AND SERVING OPPOSITION PAPERS AND REQUEST FOR A HEARING:** Pursuant to LBR 9013-1(o), any party who opposes the Motion may request a hearing on the Motion. The deadline to file and serve a written opposition and request for a hearing is 14 days after the date of service of this notice, plus 3 additional days if you were served by mail, electronically, or pursuant to F.R.Civ.P. 5(b)(2)(D), (E), or (F) (pursuant to FRBP 9006(f)).

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

a. If you timely file and serve a written opposition and request for a hearing, movant will file and serve a notice of hearing at least 14 days in advance of the hearing. [LBR 9013-1(o)(4)]

b. If you fail to comply with this deadline:

    (1) Movant will file a declaration to indicate: (1) the Motion was properly served, (2) the response period elapsed, and (3) no party filed and served a written opposition and request for a hearing within 14 days after the date of service of the notice [LBR 9013-1(o)(3)];

    (2) Movant will lodge an order that the court may use to grant the Motion; and

    (3) The court may treat your failure as a waiver of your right to oppose the Motion and may grant the Motion without further hearing and notice. [LBR 9013-1(h)]

Respectfully submitted,

Date: 12/27/2024

/s/ Larry D. Simons
Signature of Movant or attorney for Movant

Larry D. Simons
Printed name of Movant or attorney for Movant

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2015                                    Page 2                      **F 9013-1.2.OPPORTUNITY.HEARING.NOTICE**

1  Larry D. Simons
   *larry@lsimonslaw.com*
2  **CHAPTER 7 TRUSTEE**
   3550 Vine Street, Suite 210
3  Riverside, California 92507
   Tel: 951.686.6300 ♦ Fax: 818.698.1981
4

5

6                    **UNITED STATES BANKRUPTCY COURT**

7            **CENTRAL DISTRICT OF CALIFORNIA, RIVERSIDE DIVISION**

8

9  In re                              Case No. 6:23-bk-13579 MH

10 STARKEISHA SHARNAY JESTER,          Chapter 7
   an individual,
11                                     **MOTION FOR ORDER APPROVING**
                                       **COMPROMISE OF CONTROVERSY**
12         Debtor.                     **BETWEEN LARRY D. SIMONS, CHAPTER**
                                       **7 TRUSTEE AND UNIVERSITY OF**
13                                     **SOUTHERN CALIFORNIA;**
                                       **MEMORANDUM OF POINTS AND**
14                                     **AUTHORITIES AND DECLARATION IN**
                                       **SUPPORT THEREOF**
15
                                       [Fed. R. Bankr. P. 9019 and Local Bankr. R.
16                                     9013-1(o)(2)]

17                                     (No Hearing Required)

18

19

20 **TO THE HONORABLE MARK HOULE, UNITED STATES BANKRUPTCY JUDGE,**

21 **THE DEBTOR, HER ATTORNEY OF RECORD AND ALL INTERESTED PARTIES:**

22         **PLEASE TAKE NOTICE** that Larry D. Simons, the duly qualified, appointed and acting

23 Chapter 7 Trustee (the "Trustee" or "Movant") of the bankruptcy estate (the "Estate") of the above-

24 captioned debtor (the "Debtor"), hereby submits his Motion for Order Approving Compromise of

25 Controversy, and represents as follows:

26         ///

27         ///

28

Larry D. Simons, Chapter 7 Trustee
3550 Vine Street, Suite 210
Riverside, California 92507

Larry D. Simons, Chapter 7 Trustee
3550 Vine Street, Suite 210
Riverside, California 92507

## MOTION

The Trustee hereby brings this Motion for Order Approving Compromise of Controversy (the "Motion") in the above captioned case.  The Motion is based on the following set of relevant facts:

Starkeisha Sharnay Jester, the debtor ("Debtor") filed a voluntary Chapter 7 petition on August 10, 2023 (the "Petition Date").   Larry D. Simons was appointed as interim, then permanent trustee (the "Trustee").

The Trustee examined the Debtor at her meeting of creditors held pursuant to Section 341 of the Code.  Based upon the Trustee's review of Debtor's schedules and her testimony at her meeting of creditors, the Trustee filed his report of no distribution.

Based upon the filing of the no distribution report, the Court entered a discharge in favor of the Debtor on November 20, 2023 and subsequently closed the case.

Debtor did not list the University of Southern California ("U.S.C.") in her papers despite her participation in a legal action against it.  At the time of her bankruptcy filing, U.S.C. and Debtor had claims against each other.  Due to Debtor's failure to list U.S.C. as a creditor or list her claim against U.S.C. in her schedules, U.S.C. was unaware of Debtor's bankruptcy filing and subsequent discharge.  Further, Debtor's failure to list her claim against U.S.C. prevented the Trustee from investigating and determining the value (if any) of Debtor's claim.

Upon learning of Debtor's bankruptcy filing, on January 22, 2024, U.S.C. filed a motion to reopen the bankruptcy case in order to file a nondischargeability complaint against Debtor.   The Court granted U.S.C.'s motion by that certain order entered on January 25, 2024.

On February 15, 2024, U.S.C. filed its complaint for nondischargeability against the Debtor alleging claims under 11 U.S.C. § 523 (the "523 Action").

Subsequently, U.S.C. filed a general, unsecured claim in the amount of $189,956.00 (the "POC").  After the Trustee set a claims bar date, the total amount of other creditor claims filed was $814.27.

///

Larry D. Simons, Chapter 7 Trustee
3550 Vine Street, Suite 210
Riverside, California 92507

1  Trustee also successfully objected to Debtor's amended exemption in which she sought to

2  exempt her claim against U.S.C..

3  Based upon these facts, U.S.C. and the Trustee entered into a settlement agreement, a true

4  and correct copy of which is attached hereto as Exhibit "1." (the "Settlement Agreement").

5  Through the Settlement Agreement, U.S.C. will tender $1,200 to the Trustee and withdraw its POC.

6  In exchange, both U.S.C. and Trustee entered into mutual releases resolving the outstanding claims

7  that existed between U.S.C. and Debtor.

8  The Trustee respectfully submits that the approval of the compromise is in the best interests

9  of the estate. Through this Motion, Trustee expects to pay all allowed claims in full and U.S.C. will

10  dismiss its pending 523 Action against the Debtor.

11  By approving the instant Motion, the Trustee will be able to close the Estate quicker and

12  distribute monies to creditors.

13  **WHEREFORE**, based on the foregoing, the Trustee respectfully requests that the Motion

14  be granted in all respects, and for such other and further relief as the Court deems just and

15  appropriate.

16  Dated: 12/27/2024          */s/Larry D. Simons*
                              Larry D. Simons, Chapter 7 Trustee

17
18
19
20
21
22
23
24
25
26
27
28

Larry D. Simons, Chapter 7 Trustee
3550 Vine Street, Suite 210
Riverside, California 92507

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Through this Motion, the Trustee seeks approval of a compromise reached with the University of Southern California (U.S.C.) relating to a pending lawsuit wherein U.S.C. had a claim against the Debtor and the Debtor had filed a cross claim against U.S.C. (the "Claim").

In order to settle their disputes, the Trustee and U.S.C. have reached a settlement resolving all claims existing and arising out of the Estate's interest in the Debtor's Claim against U.S.C.  In sum, U.S.C. will pay the Estate $1,200.00, withdraw its previously filed proof of claim and dismiss its pending nondischargibility complaint against the Debtor.

The Trustee submits that the compromise satisfies each of the prerequisites adopted by the Ninth Circuit.  Therefore, the Court should defer to the Trustee's business judgment and grant the Motion.

### II.    STATEMENT OF FACTS

Starkeisha Sharnay Jester, the debtor ("Debtor") filed a voluntary Chapter 7 petition on August 10, 2023 (the "Petition Date").   Larry D. Simons was appointed as interim, then permanent trustee (the "Trustee").

The Trustee examined the Debtor at her meeting of creditors held pursuant to Section 341 of the Code.  Based upon the Trustee's review of Debtor's schedules and her testimony at her meeting of creditors, the Trustee filed his report of no distribution.

Based upon the filing of the no distribution report, the Court entered a discharge in favor of the Debtor on November 20, 2023 and subsequently closed the case.

Debtor did not list the University of Southern California ("U.S.C.") in her papers despite her participation in a legal action against it.  At the time of her bankruptcy filing, U.S.C. and Debtor had claims against each other.  Due to Debtor's failure to list U.S.C. as a creditor or list her claim against U.S.C. in her schedules, U.S.C. was unaware of Debtor's bankruptcy filing and subsequent discharge.  Further, Debtor's failure to list her claim against U.S.C. prevented the Trustee from investigating and determining the value (if any) of Debtor's claim.

Larry D. Simons, Chapter 7 Trustee
3550 Vine Street, Suite 210
Riverside, California 92507

1    Upon learning of Debtor's bankruptcy filing, on January 22, 2024, U.S.C. filed a motion to

2    reopen the bankruptcy case in order to file a nondischargability complaint against Debtor.    The

3    Court granted U.S.C.'s motion by that certain order entered on January 25, 2024.

4    On February 15, 2024, U.S.C. filed its complaint for nondischargability against the Debtor

5    alleging claims under 11 U.S.C. § 523 (the "523 Action").

6    Subsequently, U.S.C. filed a general, unsecured claim in the amount of $189,956.00 (the

7    "POC").   After the Trustee set a claims bar date, the total amount of other creditor claims filed was

8    $814.27.

9    Trustee also successfully objected to Debtor's amended exemption in which she sought to

10    exempt her claim against U.S.C..

11    Based upon these facts, U.S.C. and the Trustee entered into a settlement agreement, a true

12    and correct copy of which is attached hereto as Exhibit "1." (the "Settlement Agreement").

13    Through the Settlement Agreement, U.S.C. will tender $1,200 to the Trustee and withdraw its POC.

14    In exchange, both U.S.C. and Trustee entered into mutual releases resolving the outstanding claims

15    that existed between U.S.C. and Debtor.   Further, U.S.C. will dismiss its pending nondischargability

16    complaint against the Debtor.

17    The Trustee respectfully submits that the approval of the compromise is in the best interests

18    of the estate. Through this Motion, the Trustee will be receiving sufficient funds to pay all allowed

19    claims in full.

20    **III.    THE LEGAL STANDARD FOR APPROVING A COMPROMISE OF
         CONTROVERSY**

21

22    "On motion by the trustee and after a hearing on notice to creditors, the United States

23    Trustee, the debtor and indentured trustees as provided in Rule 2002 and as such other entities as

24    the court may designate, the court may approve a compromise or settlement." Fed. R. Bankr. P.

25    9019(a).

26    ///

27    ///

28

Larry D. Simons, Chapter 7 Trustee
3550 Vine Street, Suite 210
Riverside, California 92507

1    Approval of a proposed compromise turns on whether the compromise is in "the best

2   interests of the estate." In re Woodson, 839 F.2d 610, 620 (9th Cir. 1988); In re Schmidt, 215 B.R.

3   417, 424 (9th Cir. B.A.P. 1997);  St. Paul Fire & Marine Insurance Co. v. Vaughn, 779 F.2d 1003,

4   1010 (4th Cir. 1985); In re Continental Investment Corp., 637 F.2d 8, 11 (1st Cir. 1980).

5   Compromise is favored over continued litigation.  See In re A & C Properties, 784 F.2d 1377, 1381

6   (9th Cir. 1986) cert. denied, 479 US 854, 107 Sup. Ct. 189 (1986).

7    Specifically, in evaluating whether to approve a compromise, courts in the Ninth Circuit

8   must consider the following:

9        (a)    The probability of success in litigation;

10        (b)    the difficulties, if any, to be encountered in the matter of collection;

11        (c)    the complexity of the litigation involved and the expense, inconvenience and
    delay necessary attaining it;

12

13        (d)    the paramount interest of the creditors and a proper deference to their
    reasonable views in the premises.

14   A & C Properties, 784 F.2d at 1381.

15    In considering these factors, the courts are guided by two principles.  First, "the law favors

16   compromise." Port O'Call Investment Co. v. Blair (In re Blair), 538 F.2d 849, 851 (9th Cir. 1976).

17   Compromises are favored in bankruptcy and have become "a normal part of the process of

18   reorganization." Protective Committee for Independent Stockholders of TMT Trailer Ferry Inc. v.

19   Anderson, 390 U.S. 414, 424, 88 S. Ct. 1157 (1968) quoting Case v. Los Angeles Lumber Prods.

20   Co., 308 U.S. 106, 130 (1939).

21    Second, a compromise should be approved unless it "fall [s] below the lowest point in the

22   range of reasonableness." Cosoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2nd Cir.

23   1983), cert. denied 464 U.S. 822, 104 S. Ct. 88 (1985).  As the court in W.T. Grant aptly

24   commented:

25        [The] responsibility of the bankruptcy judge, and ours upon review, is
         not to decide the numerous questions of law and fact raised by the
26        appellants but rather to canvass the issues and see whether the
         settlement fall[s] ' below the lowest point in the range of
27        reasonableness. . . .

28

Larry D. Simons, Chapter 7 Trustee
3550 Vine Street, Suite 210
Riverside, California 92507

1  Id., at 608.

2      The compromise approval process does not contemplate that a bankruptcy court will

3  substitute its business judgment for that of a chapter 7 trustee. To the contrary, a settlement that has

4  been negotiated by a trustee, as representative of the estate, is entitled to deference.  See In re

5  Morrison, 69 B.R. 586, 592 (Bankr. E.D. Pa. 1987) (objecting creditors may not substitute their

6  judgment for that of the trustee).  Trustees are generally and properly given broad discretion in

7  deciding how to perform the myriad of duties imposed upon them by the Bankruptcy Code,

8  including the discretion to negotiate settlements and compromises of disputes.  In re Marples, 266

9  B.R. 202 (Bankr. D. Idaho 2001).  Moreover, when considering these factors, the court need only

10  canvass the issues, "a mini trial on the merits is not required."  Schmidtt, 215 B.R. at 423.

11      In this instance, there are a variety of reasons why the Court should approve the settlement

12  reached by the Trustee and U.S.C..  As the Trustee will demonstrate, the application of the A & C

13  Properties test to this settlement requires a finding that the compromise be approved, even over the

14  objections of disappointed or upset creditors.

15  **IV.    THE AGREEMENT BETWEEN THE TRUSTEE AND U.S.C. SHOULD BE
   APPROVED PURSUANT TO RULE 9019(a)**

16

17      For the following reasons, the Trustee submits that the Settlement Agreement is in the best

18  interests of the estate, and satisfies the criteria established by the Ninth Circuit in A & C Properties.

19      **A.    The Probability of Success in Litigation**

20      With regards to this prong of the test, the Trustee has evaluated the alleged claims that the

21  Debtor holds against U.S.C.  The Trustee has independently determined that it would be costly to

22  litigate the Debtor's cross claims and even if Trustee prevailed, the Estate would have receive more

23  than the amount of all claims, including U.S.C.'s POC, to achieve the same result.  Further, the

24  Trustee would have to employ a professional to prosecute Debtor's claims against U.S.C.  Even if

25  proposed counsel agreed to become employed on a contingency basis, any recovery would be

26  diluted to pay administrative expenses, including special counsel's fees.

27      ///

28

Larry D. Simons, Chapter 7 Trustee
3550 Vine Street, Suite 210
Riverside, California 92507

1    By entering into the Settlement Agreement, Trustee is achieving certainty and finality,

2    resulting in all claims being paid in full.

3    In satisfying this first part of the four part A & C Properties test, the burden is not on a

4    trustee to conclusively establish that a defendant would be successful at a trial on the issues raised

5    in an action, as that would defeat the purpose of settlement and would eliminate any cost savings

6    from the settlement.  Rather, all that a trustee is required to demonstrate is that, to the reasonable

7    satisfaction of the court, all things being considered, it is prudent to eliminate the risks of litigation

8    to achieve specific certainty, though it might be considerably less, or more, than were the case

9    fought to the bitter end.  See In re Aloha Racing Foundation, Inc., 257 B.R. 83 (Bankr. N.D. Ala.

10    2000).

11    In fact, at least one court has found that a settlement reached by a trustee could be approved

12    even after the court had decided to rule for the trustee on a contested matter. See In re Dalen, 259

13    B.R. 586 (Bankr. W.D. Mich. 2001).  In Dalen, the trustee sought approval of a settlement after the

14    court had already decided to rule for the trustee, such that the estate would have profited if the

15    settlement were rejected.  The ultimate issue for the court, however, was whether the trustee

16    exercised reasonable judgment in entering into the settlement based upon information then in his

17    possession.  As long as the court is able to make this determination, and finds that the trustee has

18    fulfilled his fiduciary duty to the estate, the fact that creditors are objecting to the settlement is

19    irrelevant to the court's determination under Rule 9019(a).

20    In this matter, the Settlement Agreement achieves the best outcome for the Estate while

21    reducing administrative expenses.  It further eliminates pending litigation that U.S.C. has initiated

22    against the Debtor. Trustee's actions will allow him to maximize the return to the creditors of the

23    Estate by minimizing administrative costs.

24    ///

25    ///

26    ///

27    ///

28

Larry D. Simons, Chapter 7 Trustee
3550 Vine Street, Suite 210
Riverside, California 92507

**B.     The Difficulties, if any, to be Encountered in the Matter of Collection and The Complexity of the Litigation and the Expense, Inconvenience and Delay Necessarily Attending It**

These are the second and third prongs of the A & C Properties test.  The rationale behind public policy favoring pre-trial settlements is that litigation, depending upon its complexity, can occupy a court's docket for years on end, depleting the resources of the a parties and the taxpayers while rendering meaningful relief increasingly elusive.   In a bankruptcy context, such litigation costs can be particularly burdensome on the bankruptcy estate given the financial instability of the estate. See In re Grau, 267 B.R. 896 (Bankr. S.D. Fla. 2001).

Here, the resolution of the Estate's interest in the Claim would be delayed if the Trustee had to employ professionals and prosecute Debtor's cross claims. Further, there is no guarantee that the Trustee would recover a higher dollar amount which would result in all creditor claims being paid in full.   Lastly, any prosecution of Debtor's claims against U.S.C. would result in a delay in administering assets of the Estate.

The compromise reached by U.S.C.'s counsel and the Trustee bypasses the outlay of any additional administrative expenses and allows the unsecured creditors to be paid in full.   As outlined, these additional steps, which would be required before the Trustee could realize any monies from the Claim would cause a significant delay in the estate's receipt of funds.

Therefore, the Trustee's decision to resolve the dispute over the Estate's interest in the Claim will benefit the estate and creditors alike as it allows the Trustee to avoid certain delays that would occur if he had to litigate the Claim. The proposed compromise allows the Trustee to avoid these delays and proceed in a timely manner towards the closing of the Estate.

**C.     The Paramount Interest of Creditors**

The paramount interest of creditors which a bankruptcy court must consider in deciding whether to approve a proposed compromise, generally reflects not only the desire of creditors to obtain the maximum possible recovery, but also their competing desire that the recovery should occur in the least amount of time possible. See Marples, supra.

///

1    The Claim is the only asset of the Estate.  By reaching the compromise with the U.S.C. over

2  the Claim, Trustee is providing a dividend that will pay creditors in full (which is possible by the

3  withdrawal of the U.S.C. POC). Funds received from the Claim imbues the estate with a valuable

4  asset, which can be used to pay the claims of administrative and unsecured creditors.

5  **V.    CONCLUSION**

6    Based upon the foregoing, the Trustee respectfully requests that the Court grant the Motion

7  in all respects, and for such other and further relief as the Court deems just and proper.

8  Dated: December 27, 2024                    _____*/s/Larry D. Simons*_____
                                              Larry D. Simons, Chapter 7 Trustee
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Larry D. Simons, Chapter 7 Trustee
3550 Vine Street, Suite 210
Riverside, California 92507

MOTION FOR ORDER APPROVING COMPROMISE OF CONTROVERSY BETWEEN LARRY D. SIMONS,
CHAPTER 7 TRUSTEE AND UNIVERSITY OF SOUTHERN CALIFORNIA - CASE NO. 6:23-BK-13579 MH

# DECLARATION OF LARRY D. SIMONS

I, Larry D. Simons declare:

1.      I am the duly appointed, qualified and acting chapter 7 trustee (the "Trustee") of the bankruptcy estate (the "Estate") of Starkeisha Sharnay Jester (the "Debtor").[1]  I have personal knowledge, information or belief of the facts set forth below, and, if called as a witness, could and would competently testify thereto under oath.

2.      This declaration is made in support of the attached motion (the "Motion") to approve a compromise of controversy (the "Settlement").   Through this Motion, I have agreed to settle the alleged cross claim(s) Debtor has against U.S.C. on the following terms: U.S.C. will pay the Estate $1,200.00, withdraw its previously filed proof of claim and dismiss its pending nondischargibility complaint against the Debtor.

3.      I have reached this compromise with U.S.C. based upon the following facts:

a.      Debtor filed a voluntary Chapter 7 petition on August 10, 2023 (the "Petition Date").  I was appointed as interim, then permanent trustee (the "Trustee").

b.      I examined the Debtor at her meeting of creditors held pursuant to Section 341 of the Code.  Based upon my review of Debtor's schedules and her testimony at her meeting of creditors, I filed my report of no distribution.

c.      Based upon the filing of the no distribution report, the Court entered a discharge in favor of the Debtor on November 20, 2023 and subsequently closed the case.

d.      Debtor did not list the University of Southern California ("U.S.C.") in her papers despite her participation in a legal action against it.  At the time of her bankruptcy filing, U.S.C. and Debtor had claims against each other.  Due to Debtor's failure to list U.S.C. as a creditor or list her claim against U.S.C. in her schedules, U.S.C. was unaware of Debtor's bankruptcy filing and subsequent discharge.  Further, Debtor's failure to list her claim against U.S.C. prevented me from investigating and determining the value (if any) of Debtor's claim.

---

[1] Capitalized terms have the same meaning as that ascribed to in the Motion unless otherwise defined herein

Larry D. Simons, Chapter 7 Trustee
3550 Vine Street, Suite 210
Riverside, California 92507

Larry D. Simons, Chapter 7 Trustee
3550 Vine Street, Suite 210
Riverside, California 92507

e.    Upon learning of Debtor's bankruptcy filing, on January 22, 2024, U.S.C. filed a motion to reopen the bankruptcy case in order to file a nondischargeability complaint against Debtor.  The Court granted U.S.C.'s motion by that certain order entered on January 25, 2024.

f.    On February 15, 2024, U.S.C.  filed its complaint for nondischargeability against the Debtor alleging claims under 11 U.S.C. § 523 (the "523 Action").

g.    Subsequently, U.S.C. filed a general, unsecured claim in the amount of $189,956.00 (the "POC").   After I set a claims bar date, the total amount of other creditor claims filed was $814.27.

h.    I also successfully objected to Debtor's amended exemption in which she sought to exempt her claim against U.S.C..

4.    Based upon these facts, U.S.C. and myself entered into a settlement agreement, a true and correct copy of which is attached hereto as Exhibit "1." (the "Settlement Agreement"). Through the Settlement Agreement, U.S.C. will tender $1,200 to the Estate and withdraw its POC. In exchange, both U.S.C. and myself entered into mutual releases resolving the outstanding claims that existed between U.S.C. and Debtor.  Further, U.S.C. will dismiss its pending nondischargeability complaint against the Debtor.

5.    In determining whether the settlement I negotiated with U.S.C. was in the best interests of the estate, I followed the guidelines adopted by the Ninth Circuit.  Specifically, I made an independent determination of (i) the probability of success in the litigation, (ii) the difficulties, if any, I would encounter in the matter of collection, (iii) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it, and (iv) the paramount interest of the creditors and a proper deference to their reasonable views.

6.    The Motion is made upon the grounds that through the Compromise reached with U.S.C., I am certain of being able to pay allowed claims in full, close the case in an expeditious manner and obtain dismissal of the pending nondischargeability complaint filed by U.S.C. against the Debtor. Such action will be accomplished without having to hire any additional professionals to prosecute Debtor's cross claim.

7.    It is therefore in my business judgment that the Compromise reached with U.S.C. is within the range of reasonableness and is in the best interest of the Estate and does not fall below the lowest point in the range of reasonableness as there is no guarantee that I would be able to achieve a greater result (paying all creditors in full) had I continued to prosecute the Debtor's cross claim.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 27th day of December 2024 at Riverside, California.

_/s/ Larry D. Simons_
Larry D. Simons

MOTION FOR ORDER APPROVING COMPROMISE OF CONTROVERSY BETWEEN LARRY D. SIMONS, CHAPTER 7 TRUSTEE AND UNIVERSITY OF SOUTHERN CALIFORNIA - CASE NO. 6:23-BK-13579 MH

Larry D. Simons, Chapter 7 Trustee
3550 Vine Street, Suite 210
Riverside, California 92507

# EXHIBIT 1

## SETTLEMENT AGREEMENT AND
## MUTUAL RELEASE OF ALL CLAIMS

This Settlement Agreement and Mutual Release of All Claims (this "Settlement Agreement") dated as of December 4, 2024 is made by and between the University of Southern California ("USC") on the one hand, and Larry D Simons, as Chapter 7 Trustee of the bankruptcy estate of Starkeisha Sharnay Jester (the "Trustee," and collectively with USC the "Parties"), on the other hand.

### RECITALS:

On August 10, 2023 (the "Petition Date"), debtor Starkeisha Sharnay Jester (the "Debtor") filed a petition for relief under chapter 7 of the Bankruptcy Code, commencing Bankruptcy Case No. 6:23-bk-13579-MH (the "Bankruptcy Case").

On September 13, 2023, the Trustee filed the Chapter 7 Trustee's Report of No Distribution, and on November 20, 2023, the Bankruptcy Court entered an order granting a discharge to the Debtor, discharging the Trustee of his duties, and closing the Bankruptcy Case (*see* Docket Nos. 11 and 12).

Debtor failed to list USC as a creditor in her bankruptcy papers. Due to Debtor's omission, USC never received notice of the Bankruptcy Case and the case was closed. Upon learning of the Bankruptcy Case, on January 22, 2024, USC filed *Creditor University of Southern California's Motion to Reopen the Bankruptcy Case; Memorandum of Points and Authorities in Support Thereof; Declarations of Paul Berkowitz and Jennifer L. Nassiri in Support Thereof* (Docket No. 14) requesting entry of an order reopening the Bankruptcy Case for USC to file a non-dischargeability complaint against Debtor for the Debtor's alleged embezzlement of money from the USC bookstore while USC employed Debtor.

On January 25, 2024, the Bankruptcy Court entered an order approving USC's motion and reopened the Bankruptcy Case (Docket No. 15).

On February 15, 2024, USC filed its *Complaint for: (1) Non-Dischargeability of Debt Pursuant to 11 U.S.C. §§ 523(a)(3)(B) and 523(a)(4); and (2) Non-Dischargeability of Debt Pursuant to 11 U.S.C. §§ 512(a)(3)(B) and 523(a)(6)*, commencing Adversary Case No. 6:24-ap-01014-MH (the "Adversary Proceeding") against the Debtor.

On March 8, 2024, USC filed a proof of claim as Claim No. 1 for $189,956.00 for cash the Debtor stole from the USC Bookstore during her employment in the accounting and finance department for the university's bookstore prior to the commencement of her Bankruptcy Case (the "Claim"). The Claim incorporates the allegations brought against the Debtor in response to the Debtor's Demand for Arbitration (the "Arbitration Action") asserting various employment-related claims against USC. While the Arbitrator dismissed most of Ms. Jester's claims against USC in November 2023 pursuant to a dispositive motion filed by USC, the Arbitration Action itself and USC's cross-claims remain pending. The Debtor further failed to disclose in her bankruptcy schedules any claims against USC or the pending Arbitration Action resulting in USC not receiving proper notice of the Bankruptcy Case.

On May 22, 2024, the *Trustee filed the Notice of Appointment; Acceptance of Appointment as Trustee, being reappointed as Chapter 7 Trustee in the Bankruptcy Case* (Docket No. 26). The Trustee also sent a *Notice of Possible Dividend and Order Fixing Time to File Claims*, noting that creditors are required to file proofs of claims on or before October 7, 2024 (the "Bar Date").

As of the Petition Date, USC held a prepetition unsecured claim totaling $189,956.00 plus attorneys' fees and costs and as of the Bar Date, and the Estate may hold claims asserted in the Arbitration Action against USC.

After the Bar Date, the total amount of claims filed in the Bankruptcy Case, not including USC's Claim, is $814.27.

USC and the Trustee have met and conferred extensively on the Claim and any potential claims owned by the Bankruptcy Estate against USC on account of the Arbitration Action, and now wish to settle all disputes regarding the Claim and Arbitration Action.

NOW THEREFORE, for the consideration set forth herein, the Parties hereby memorialize the terms and conditions of their settlement in this Settlement Agreement.

## AGREEMENT

1.      Settlement. Within thirty (30) business days after the last date of (i) the Bankruptcy Court's order approving this Settlement Agreement becomes a final non-appealable order, (the "Effective Date"), (ii) the receipt by USC of a completed W-9 form for the Trustee, and (iii) the receipt by USC of bank wiring instructions for Trustee (if the payment is made by a wire), USC shall pay the Trustee one thousand two hundred dollars ($1,200.00) (the "Settlement Amount") in full and final settlement of the Arbitration Action claims. Within seven (7) calendar days of transmitting the Settlement Amount, USC shall file a voluntary dismissal of the Adversary Proceeding and withdrawal of its Claim. In exchange, within seven (7) calendar days of receipt of the Settlement Amount, the Trustee agrees to submit with USC a joint request to the Arbitrator of the Arbitration Action requesting dismissal of the Arbitration Action.

2.      Effectiveness of Settlement Agreement; Bankruptcy Court Approval. The effectiveness of this Settlement Agreement is expressly conditioned upon the Bankruptcy Court entering an order approving this Settlement Agreement Bankruptcy Case (the "Approval Order"), after the Trustee gives notice to creditors under Federal Rule of Bankruptcy Procedure 9019 and such Approval Order becoming a "final order" (that is, an order that is not subject to any pending appeal or any motion under Federal Rule of Bankruptcy Procedure 8002(b), and all relevant time periods for filing such appeals or motions have expired, or, if such appeal or motion has been filed, it has been withdrawn, denied or dismissed and any further period in which to file an appeal or such a motion has expired). The Trustee agrees to use best efforts to obtain the Approval Order. If the Approval Order is not entered within 120 days after the date of this Settlement Agreement, then the Settlement Agreement and all of its terms, including without limitation the Mutual Releases and Waivers set forth herein, shall be rendered null and void.

3.    Mutual Releases and Waivers.

(a)    In consideration of the terms and conditions of this Settlement Agreement, USC on the one hand, and the Trustee on the other hand on behalf of the Estate, mutually release and forever discharge each other and their past and present estates, liquidating trusts, debtors, trustees, attorneys and agents from any and all claims, demands, obligations or causes of action of any nature whatsoever based on conduct or omissions occurring prior to the date of this Settlement Agreement, including without limitation the Claim and any potential Arbitration Action claims, whether based on tort, statute, contract, indemnification, contribution, subrogation or any other theory of recovery and whether for compensatory or punitive damages, existing prior to or as of the date of this Settlement Agreement, whether known or unknown, and whether or not related to the Bankruptcy Case or Arbitration Action, including all causes of action related to such claims which could have been brought as part of a lawsuit by any of the Parties against each other (the "Mutual Releases").

(b)    The Parties expressly waive any right to assert hereafter that any claim has been omitted from the terms of the Mutual Releases through ignorance, oversight, error or any other cause, and they also expressly waive all rights that they may have under section 1542 of the California Civil Code which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
> WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT
> TO EXIST IN HIS OR HER FAVOR AT TIME OF EXECUTING
> THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST
> HAVE MATERIALLY AFFECTED HIS OR HER
> SETTLEMENT WITH THE DEBTOR.

Each of the Parties expressly acknowledges that they may in the future discover facts in addition to or different from those they now know or believe to be true with respect to the claims they have or could assert against each other, but each of the Parties agrees nevertheless to fully, finally and forever settle such claims, whether or not hidden or excluded, known or unknown, without regard to the subsequent discovery or existence of different or additional facts (the "Waivers"). The Parties acknowledge that the Mutual Releases and Waivers were separately bargained for and key elements of the settlement of which this paragraph 3 is a part.

4.    Effect of Settlement.

(a)    The Parties each acknowledge and agree that (i) the terms specified in this Settlement Agreement are a full and complete compromise of the matters involving disputed issues of law and fact; (ii) neither agreement to these terms nor events occurring during the negotiations of this Settlement Agreement (including all statements, admissions or communications made in connection therewith) by the Parties or their counsel or their representatives shall be considered, nor shall they be admissions by any party hereto; and (iii) no past or present wrongdoing by any Party to this Settlement Agreement shall be implied therefrom.

(b)    Notwithstanding the foregoing, however, and notwithstanding section 1152 of the Evidence Code, this Settlement Agreement shall be admissible in any proceeding to enforce this Settlement Agreement.

5.    Attorneys' Fees. Each of the Parties shall be responsible for its own fees and expenses incurred in connection with the Claim, the Arbitration Action, the Bankruptcy Case, and/or the Adversary Proceeding, whenever incurred, including without limitation all attorney's fees and costs. Notwithstanding the foregoing sentence, in the event it becomes necessary to enforce any of the terms of this Settlement Agreement, the prevailing party shall be entitled to reasonable and necessary attorneys' fees and expenses incurred in connection with enforcing the terms of this Settlement Agreement.

6.    Binding Agreement. This Settlement Agreement shall be binding upon the Debtor, the Estate, the Parties, and inure to the benefit of the Parties and their respective successors, executors, administrators, agents, representatives, heirs, assigns, and present, former and future shareholders, directors, officers, principals, partners, employees, and professional advisers; provided, however, that no Party may assign any of its rights or delegate any of its duties under this Settlement Agreement without the written consent of the other Parties hereto.

7.    Integration. This Settlement Agreement contains the entire agreement and understanding between the Parties and supersedes any and all prior agreements, representations and understandings with respect to the matters contained herein. Each Party agrees that it has not relied upon any representation, warranty, condition, understanding or agreement of any kind in entering into this Settlement Agreement other than those actually set forth in this Settlement Agreement.

8.    Authority. Each signatory to this Settlement Agreement represents and warrants that, subject to Bankruptcy Court approval, he or she has the requisite authority and capacity to act on behalf of the Party for whom he or she is signing and to bind such Party and all who might claim through such Party under the terms of this Settlement Agreement.

9.    Advice of Counsel. Each Party represents that it has either received independent advice from legal counsel of its own choice with respect to the advisability of entering into this Settlement Agreement and with respect to providing the Mutual Releases and Waivers contained in this Settlement Agreement, or has, after due and proper consideration, declined to seek the advice of counsel, but fully understands and appreciates all of the terms and provisions of this Settlement Agreement, including, without limitation, all of the Mutual Releases and Waivers provided for herein. All Parties shall be deemed to have participated in drafting this Settlement Agreement and it shall not be construed against any of them.

10.    No Assignment. The Parties represent and warrant that they have not assigned, transferred, or purported to assign or transfer, in whole or in part, any interest in any of the rights and claims subject to this Settlement Agreement.

11.    No Amendment. This Settlement Agreement shall not be amended or modified in any respect except by a written instrument executed by all Parties or their respective successors or assigns.

12.     Applicable Law.  This Settlement Agreement shall be interpreted, construed and enforced in accordance with the laws of the state of California.  Any action arising from or in connection with the enforcement of this Settlement Agreement shall be filed and maintained before the Bankruptcy Court.

13.     Execution of Additional Documents.  The Parties agree to execute and exchange such additional documentation as may be necessary to accomplish and fulfill their respective obligations and agreements as set forth herein.

14.     Severability.  If any provision of this Settlement Agreement is found by any court or government agency to be illegal, invalid, ineffective or unenforceable for any reason, the remaining terms of this Agreement shall remain in full force and effect.

15.     Counterparts; Electronic Delivery.  This Settlement Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, and all of which together shall be deemed to be a single document.  Signature pages may be transmitted by DocuSign, facsimile, email or other electronic delivery, and such electronically delivered signatures shall constitute the Parties' original signatures for all purposes.

*[Remainder of Page Intentionally Left Blank; Signature Page Following]*

IN WITNESS WHEREOF, the Parties hereto have executed this Settlement Agreement as of the date first above written.

UNIVERSITY OF SOUTHERN CALIFORNIA

By: _____

Stacy Giwa, Interim Senior Vice President Human Resources, Equity, and Compliance

CHAPTER 7 TRUSTEE OF THE ESTATE OF STARKEISHA SHARNAY JESTER

By: _____

Larry D. Simons, Chapter 7 Trustee

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

*3550 Vine Street, Suite 210, Riverside, California 92507*

A true and correct copy of the foregoing document entitled (*specify*):

**NOTICE OF MOTION AND MOTION TO APPROVE COMPROMISE OF CONTROVERSY BETWEEN LARR D. SIMONS, CHAPTER 7 TRUSTEE AND UNIVERSITY OF SOUTHERN CALIFORNIA; MEMEROANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS IN SUPPORT THEREOF**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) __12/27/2024_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

**OUST-RIVERSIDE:** ustpregion16.rs.ecf@usdoj.gov
**Michael Jay Berger:** michael.berger@bankruptcypower.com
**Stephen A. Alpert:** enotice@pricelawgroup.com
**Jennifer Nassiri:** JNassiri@sheppardmullin.com
**Michael Jay Berger:** michael.berger@bankruptcypower.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) ___12/27/2024_____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 12/27/2024 | Keila Sosa | /s/ Keila Sosa |
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                    **F 9013-3.1.PROOF.SERVICE**

Label Matrix for local noticing
0973-6
Case 6:23-bk-13579-MH
Central District of California
Riverside
Fri Dec 27 10:56:54 PST 2024

Employment Development Dept.
Bankruptcy Group MIC 92E
P.O. Box 826880
Sacramento, CA 94280-0001

Affirm, Inc.
Attn: Bankruptcy
650 California St, Fl 12
San Francisco, CA 94108-2716

(p) BANK OF AMERICA
PO BOX 982238
EL PASO TX 79998-2238

Eve H Wagner Esq
633 W 5th St Ste 1000
Los Angeles CA 90071-3509

NCB Management Services, Inc.
P.O. Box 1099
Langhorne, PA 19047-6099

One Main
PO Box 1010
Evansville, IN 47706-1010

Pac Sun
PO Box 659705
San Antonio, TX 78265-9705

SYNCB/Amazon
PO Box 965036
Orlando, FL 32896-5036

Synch/Car Care
Attn: Bankruptcy
PO Box 965060
Orlando, FL 32896-5060

Target
1000 Nicollet Mall
Minneapolis, MN 55403-2542

Riverside Division
3420 Twelfth Street,
Riverside, CA 92501-3819

BMG Money
Attn: Bankruptcy
444 Brickell Avenue Suite 250
Miami, FL 33131-2404

Davids Bridal
PO Box 703
Wood Dale, IL 60191-0703

(p) MONARCH RECOVERY MANAGEMENT INC
ATTN COMPLIANCE
3250 TILLMAN DRIVE
SUITE 75
BENSALEM PA 19020-2059

Nordstrom FSB
Attn: Bankruptcy
Po Box 6555
Englewood, CO 80155-6555

Onemain
PO Box 3251
Evansville, IN 47731-3251

(p) PORTFOLIO RECOVERY ASSOCIATES LLC
PO BOX 41067
NORFOLK VA 23541-1067

Superior Court of CA-San Bernardino
Case No: CIVSB2222484
247 W. Third Street
San Bernardino, CA 92415-0210

Synchrony Bank
PO Box 965033
Orlando, FL 32896-5033

Franchise Tax Board
Bankruptcy Section MS: A-340
P.O. Box 2952
Sacramento, CA 95812-2952

Ashley Funding Services, LLC
Resurgent Capital Services
PO Box 10587
Greenville, SC 29603-0587

(p) CARE FINANCIAL SERVICES INC
3075 E IMPERIAL HWY STE 200
BREA CA 92821-6753

Hunt & Henriques
Case No: CIV SB 2222484
7017 Realm Dr.
San Jose, CA 95119-1321

NTL Recovery
205 S. Broadway
Los Angeles, CA 90012-3617

One Main Financial
750 N. Archibald Avenue, Suite A
Ontario, CA 91764-4647

Paul Berkowitz Esq
Sheppard Mullin Richter & Hampton
1901 Ave of the Stars #1600
Los Angeles CA 90067-6055

Sams Club
Attn: Bankruptcy Dept
PO Box 105968
Atlanta, GA 30348-5968

Synchrony Bank
P.O. Box 965022
Orlando, FL 32896-5022

Target NB
C/O Financial & Retail Services
Mailstop BT PO Box 9475
Minneapolis, MN 55440-9475

Toyota Financial Services
Attn: Bankruptcy
Po Box 259001
Plano, TX 75025-9001

Toyota Financial Services
Post Office Box 5855
Carol Stream, IL 60197-5855

USB Credit Union
Attn: Bankruptcy
300 Falcon St
Wilmington, CA 90744-6407

USC Credit Union
3720 S Flower Street
Los Angeles, CA 90089-0703

USC Credit Union
King Hall, 2nd Floor
1025 West 34th Street
Los Angeles, CA 90089-0128

United States Trustee (RS)
3801 University Avenue, Suite 720
Riverside, CA 92501-3255

University of Southern CA
c/o Paul Berkowitz Esq
1901 Ave of the Stars #1600
Los Angeles CA 90067-6055

University of Southern California
Sheppard Mullin Richter & Hampton LLP
c/o Jennifer Nassiri
1901 Avenue of the Stars, Suite 1600
Los Angeles, CA 90067-6055

Victoria's Secret
P.O. Box 182789
Columbus, OH 43218-2789

Larry D Simons (TR)
Law Offices of Larry D. Simons
3550 Vine Street, Suite 210
Riverside, CA 92507-4175

Michael Jay Berger
The Law Offices of Michael Jay Berger
9454 Wilshire Blvd.
6th Floor
Beverly Hills, CA 90212-2980

Starkeisha Sharnay Jester
2792 Genevieve Street
San Bernardino, CA 92405-3516

Steven A Alpert
6345 Balboa Blvd., Suite 247
Encino, CA 91316-1580

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Bank Of America
Attention: Recovery Department
4161 Peidmont Pkwy.
Greensboro, NC 27410

CMRE
3075 E Imperial Hwy Ste
Brea, CA 92821

Monarch Recovery Management
3260 Tillman Drive, Suite 75
Bensalem, PA 19020

(d)Monarch Recovery Management  Inc.
PO Box 986
Bensalem, PA 19020

Portfolio Recovery
120 Corporate Blvd Suite 100
Norfolk, VA 23502

(d)Portfolio Recovery Associates, LLC
Attn: Bankruptcy
120 Corporate Boulevard
Norfolk, VA 23502

(d)Portfolio Recovery Associates, LLC
c/o WAL-MART
POB 41067
Norfolk, VA 23541

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.